UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

| | |
|---|---|
| In re:<br><br>ALTUS PHARMACEUTICALS INC.,<br><br>Debtor. | Chapter 7<br>Case No. 09-20886-WCH |

## ORDER (A) AUTHORIZING SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND OTHER ENCUMBRANCES AND (B) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN AGREEMENTS

Upon the motion [Docket No. 51] (the "Sale Motion") of Lynne F. Riley, the duly appointed Chapter 7 trustee (the "Trustee") of the above-captioned debtor (the "Debtor") seeking, inter alia, entry of an order pursuant to sections 105(a), 363, 365, 503 and 507 of chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) approving the sale of substantially all of the assets of the Debtor and (b) approving the assumption and assignment of certain agreements of the Debtor in connection with the sale; and the Sale Motion having been served as set forth therein; and it appearing that proper and adequate notice of the Sale Motion has been given and that no other or further notice is required; and after due deliberation thereon; and good and sufficient cause appearing therefor,

NOW, THEREFORE, THE COURT HEREBY FINDS THAT[1]:

A.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

B. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Notice of the Sale Motion, having been given as described above, is timely, adequate, sufficient and proper under the circumstances.

C. Capitalized terms used herein that are not otherwise defined in this Order shall have the meanings ascribed to such terms in the Asset Purchase Agreement (the "Purchase Agreement"), dated as of March 19, 2010, between the Trustee and Althea Technologies, Inc., a Delaware corporation (the "Purchaser"), or, if not otherwise defined in the Purchase Agreement or this Order, the meanings ascribed to such terms in the Sale Motion.

D. On February 16, 2010, the Court entered its Order (A) Approving Bid Procedures; (B) Authorizing and Scheduling an Auction; (C) Approving Payment of an Expense Reimbursement; (D) Establishing Procedures Relating to the Assumption and Assignment of Certain Agreements, Including Notice of Proposed Cure Amounts; (E) Establishing a Lien Bar Date; (F) Approving the Form and Manner of Notices; and (G) Scheduling Sale Hearing [Docket No. 60] (the "Bidding Procedures Order"). The Bidding Procedures Order approved certain bidding procedures (the "Bid Procedures") for the Debtor's assets.

E. The Trustee has sufficiently marketed the Purchased Assets that are subject to the Purchase Agreement in good faith under the circumstances to secure the highest and best offer therefor. The terms and conditions set forth in the Purchase Agreement, and the transactions contemplated thereby, represent fair and reasonable terms and conditions, including the amount of the purchase price, and constitute the highest and best offer obtainable for the Purchased Assets and are fair and adequate.

F.  An auction was held on March 25, 2010 (the "Auction") in accordance with the Bidding Procedures Order. Immediately prior to the conclusion of the Auction, the Trustee, in consultation with her advisors, selected the Purchaser as the Successful Bidder (as such term is defined in the Bidding Procedures Order).

G.  Proper, timely, adequate and sufficient notice of the Lien Bar Date, the Bid Procedures, the Auction, the Sale Motion and the hearing on the foregoing has been provided in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006, and no other or further notice is required.

H.  The Trustee has complied in all material respects with the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Massachusetts ("MLBR"), and more particularly MLBR 6004-1 or otherwise as may have been approved by the Court.

I.  A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein, and the rights of third parties to submit higher or otherwise better offers for all or any portion of the Purchased Assets in accordance with the Bid Procedures, have been afforded to all interested persons and entities.

J.  The Bid Procedures afforded a full, fair and reasonable opportunity for any entity to make a higher or otherwise better offer to purchase the Purchased Assets.

K.  The Trustee and the Purchaser have complied with the Bid Procedures in all material respects or as otherwise approved by this Court. The bidding and auction process was non-collusive, fair and reasonable, conducted in good faith and resulted in the Trustee's obtaining the highest available value for the Purchased Assets.

L.  The Trustee has reasonably exercised her sound business judgment in determining (1) to enter into the Purchase Agreement and (2) to sell and transfer the Purchased Assets and to

-3-

assume and assign the Purchased Contracts[2] to the Purchaser. The relief requested in the Sale Motion is in the best interests of the Debtor's estate.

M. The Purchase Agreement was negotiated, proposed and entered into by the Trustee and the Purchaser without collusion, in good faith and from arm's-length bargaining positions. The Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States or any state, territory, possession thereof, or the District of Columbia. Neither the Trustee nor the Purchaser has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code. The Purchaser is not an "insider" or "affiliate" of the Debtor (as such terms are defined in the Bankruptcy Code). The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby in consummating the transactions contemplated by the Purchase Agreement. The Purchaser will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Purchase Agreement at all times after the entry of this Order.

N. The consideration to be provided by the Purchaser for the Purchased Assets pursuant to the Purchase Agreement (i) is fair and reasonable, (ii) represents the highest and best offer for the Purchased Assets and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession thereof and the District of Columbia.

---

[2] Nothing herein shall constitute a finding that a Contract is an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code. To the extent a Contract is not executory or unexpired within the meaning of the Bankruptcy Code, it shall not be considered a Contract or Lease, but shall be subject to and covered by the provisions of the Purchase Agreement, and in particular it and any rights thereunder shall be deemed to be purchased "contracts" and "assets" within the meaning of the Purchase Agreement.

O. The Purchased Assets constitute property of the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code. Upon the entry and effectiveness of this Order, the Trustee shall have full power and authority to execute and deliver the Purchase Agreement and all other documents contemplated thereby; and no further consents or approvals will be required for the Trustee to consummate the transactions contemplated by the Purchase Agreement.

P. With respect to any and all entities asserting any options, pledges, security interests, claims, equities, reservations, third party rights, rights of first refusal, voting trusts or similar arrangements, Liens, trusts or deemed trusts (whether contractual, statutory or otherwise), charges, including court-ordered charges, or other encumbrances or restrictions on or conditions to transfer or assignment of any kind (including, without limitation to the generality of the foregoing, restrictions or conditions on or to the transfer, assignment or renewal of licenses, permits, registrations and authorizations or approvals of or with respect to governmental units and instrumentalities), whether direct or indirect, absolute or contingent, matured or unmatured, liquidated or unliquidated, perfected, registered or filed, secured or unsecured, on or against the Purchased Assets (collectively, the "Encumbrances"), either (i) such entity has consented to the sale and transfer, license and assignment, as applicable, free and clear of its Encumbrance, with such Encumbrance to attach to the proceeds of such sale and transfer, license and assignment, as applicable, respectively, (ii) applicable nonbankruptcy law permits the sale of the Purchased Assets free and clear of such Encumbrance, (iii) such Encumbrance is in bona fide dispute, or (iv) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Encumbrance, so that the conditions of section 363(f) of the Bankruptcy

Code have been met. Any claims that could have been asserted with respect to the Debtor's estate, the Purchaser or the Purchased Assets are deemed satisfied.

Q. Upon the Closing of the Purchase Agreement, the sale and transfer of the Purchased Assets to the Purchaser shall be a legal, valid and effective transfer of the Purchased Assets to the Purchaser, and shall vest in the Purchaser all right, title and interest in the Purchased Assets in accordance with the terms and conditions of the Purchase Agreement free and clear of any Encumbrances including, without limitation, any claims pursuant to any successor or successor-in-interest liability theory, under sections 105(a), 363(f) and 365 of the Bankruptcy Code, or otherwise.

R. Except as expressly set forth in the Purchase Agreement with respect to Assumed Liabilities and Permitted Encumbrances, the Purchaser shall not have any liability for any (i) obligation of the Debtor, or (ii) any claim against the Debtor related to the Purchased Assets by reason of the transfer of such Purchased Assets to the Purchaser. The Purchaser shall not be deemed, as a result of any action taken in connection with the purchase of the Purchased Assets or otherwise, to: (1) be a successor to the Debtor (other than with respect to the Assumed Liabilities and any obligations arising under the Purchased Contracts from and after the Closing); or (2) have, de facto or otherwise, merged with or into the Debtor. The Purchaser is not acquiring or assuming any liability, warranty or other obligation of the Debtor, except as expressly set forth in the Purchase Agreement or any of the Purchased Contracts.

S. The Purchaser does not constitute a successor to the Debtor because: (1) except as otherwise set forth in the Purchase Agreement, the Purchaser is not expressly or impliedly agreeing to assume any of the Debtor's liabilities; (2) the transactions contemplated by the Purchase Agreement do not amount to a consolidation, merger or a de facto merger of the Debtor

and the Purchaser; (3) the Purchaser is not merely a continuation of the Debtor; and (4) the transactions contemplated by the Purchase Agreement are not being entered into fraudulently or in order to escape liability from the Debtor's debts.

T.   The Debtor had formerly been named Altus Biologics, Inc. and is the legal successor in interest and party to any Purchased Contracts standing in the name of Altus Biologics, Inc. as of the date of such contracts.

U.   The Trustee may assume the Purchased Contracts and assign each of them to the Purchaser pursuant to section 365 of the Bankruptcy Code, or otherwise under applicable law, free and clear of all Encumbrances. The assumption and assignment of the Purchased Contracts pursuant to the terms of this Order is integral to the Purchase Agreement and is in the best interests of the Debtor's estate, the Debtor's creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Trustee.

V.   No amounts are necessary to be paid or reserved under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code, or otherwise, to cure all defaults and pay all actual pecuniary losses under the Purchased Contracts (the "Cure Amounts").

W.   (A) each Purchased Contract shall constitute a valid and existing interest in property subject to such Purchased Contract, (B) none of the Debtor's rights will have been released or waived under any such Purchased Contract and all such rights shall vest in the Purchaser free and clear of any and all Encumbrances, (C) the Purchased Contracts shall remain in full force and effect, and (D) no default shall exist under the Purchased Contracts, nor shall there exist any event or condition which, with the passage of time or the giving of notice, or both, would constitute such a default.

X.     The Purchaser has provided adequate assurance of its future performance under the Purchased Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) and 365(f)(2)(B) of the Bankruptcy Code (to the extent applicable).

Y.     All findings of fact and conclusions of law announced by the Court at the hearing in relation to the Sale Motion are hereby incorporated herein.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     The Sale Motion is GRANTED.

2.     All other objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived or settled are hereby OVERRULED on the merits.

3.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Trustee to sell and transfer the Purchased Assets and assign the Purchased Contracts to the Purchaser, in both cases free and clear of any and all Encumbrances in accordance with the terms of the Purchase Agreement and this Order.

4.     The Purchase Agreement is hereby approved in all respects, and shall be deemed in full force and effect, binding and benefiting the Trustee and the Purchaser.

5.     The Trustee is authorized, empowered and directed to implement and consummate all of the transactions contemplated by the Purchase Agreement (each, collectively, a "Sale"), including, without limitation, to sell the Purchased Assets to the Purchaser and to assume and assign to the Purchaser the Purchased Contracts, all on the terms and conditions of the Purchase Agreement, for the purchase price set forth in, and determined in accordance with, the Purchase Agreement. The Trustee is authorized, empowered and hereby directed to deliver

deeds, bills of sale, assignments and other such documentation that may be necessary or requested by the Purchaser in accordance with the terms of the Purchase Agreement to evidence the transfers required by the Purchase Agreement or to consummate the transactions contemplated thereby.

6.  Upon the Closing of the Sale, the Purchaser shall take title to and possession of the Purchased Assets subject only to the applicable Permitted Encumbrances. With the exception of such Permitted Encumbrances, pursuant to section 363(f) of the Bankruptcy Code, the transfer of title to the Purchased Assets and the Purchased Contracts shall be free and clear of any and all Encumbrances, including, without limitation, any Royalties, any claims pursuant to any successor liability or de facto merger theory or cause of action, or the like under applicable bankruptcy or non-bankruptcy law; provided, however, that the Purchaser shall not be relieved of liability with respect to the Assumed Liabilities, including any obligations accruing under the Purchased Contracts from and after the Closing Date. Upon the Closing of the Sale, each creditor is directed to execute such documents and take all other actions, including delivery of documents and tangible assets, as may be necessary to release Liens and Encumbrances (except for any Assumed Liabilities), if any, on the Purchased Assets. All Encumbrances shall attach solely to the proceeds of the Sale with the same validity and priority as they attached to the Purchased Assets immediately prior to the Closing of the Sale.

7.  All entities that are in possession of some or all of the Purchased Assets on the Closing Date are required and directed to surrender possession of such Purchased Assets to the Purchaser or its assignee as soon as possible upon request after the Closing, and this Court shall retain jurisdiction to make such other and further orders as may be necessary to facilitate the orderly delivery of possession to such Purchased Assets.

8. There are no Cure Amounts required to be paid. Upon the Closing of the Sale, the Trustee is authorized to assume and assign under section 365, or otherwise under applicable law, each Purchased Contracts to the Purchaser free and clear of all Encumbrances. Such assignment shall be deemed to (a) effect a cure of all defaults existing thereunder as of the applicable Closing Date, (b) compensate for any actual pecuniary loss to such non-Debtor party resulting from such default and (c) together with the assumption of the Purchased Contracts by the Purchaser, constitute adequate assurance of future performance thereof. The Purchaser shall have assumed the Purchased Contracts and, pursuant to section 365(f) of the Bankruptcy Code and/or operation of this Order, neither the assignment by the Trustee of such Purchased Contracts nor the Debtor's bankruptcy filing shall be a default thereunder. Neither the Debtor's estate nor the Purchaser shall have any further liabilities to the non-Debtor parties to the relevant Purchased Contracts other than the Purchaser's obligations under the Purchased Contracts that become due and payable on or after the Closing Date.

9. Any provisions in any Purchased Contract that prohibit or condition the assignment of such Purchased Contract or allow the party to such Purchased Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Purchased Contract or the Debtor's bankruptcy filing, constitute unenforceable anti-assignment provisions that are void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Trustee and assignment to the Purchaser of the Purchased Contracts have been satisfied. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code or otherwise under applicable non-bankruptcy law, the Purchaser shall be fully and irrevocably

vested with all rights, title and interest of the Trustee and the Debtor under the applicable Purchased Contract.

10. Upon the Closing of the Sale, the Purchaser shall be deemed to be substituted for the Debtor as a party to the applicable Purchased Contracts and the Debtor's estate shall be relieved from all liability on such Purchased Contracts arising after the relevant Closing. Without limiting the generality of the foregoing, upon the Closing of the Sale, the Trustee shall assume and assign all of the Debtor's rights and the Purchaser shall be deemed to be substituted for the Debtor as a party to (a) the Mutual Termination of the February 22, 2001 Agreement and Transition of Trizytek Development and Commercialization Agreement between the Debtor and Cystic Fibrosis Foundation Therapeutics, Inc. ("CF") dated February 20, 2009, including, without limitation, the rights set forth in the License Agreement by and between the Debtor and CF dated February 20, 2009 and (b) the Technology License Agreement between the Debtor and Vertex Pharmaceuticals Incorporated made as of February 1, 1999. Any property right or residual interest of the Debtor or Trustee in any Purchased Contract shall be deemed assigned to Purchaser effective as of the Closing of the Sale. Each counterparty to a Purchased Contract, including without limitation CFF and Vertex Pharmaceuticals, shall execute and deliver such documents as may reasonably be requested by the Trustee or Purchaser acknowledging the assignment to the Purchaser and substituting the Purchaser for the Debtor as a party to the Purchased Contract.

11. If the Closing does not occur, the Purchased Contracts shall not be deemed to have been assumed by the Trustee or assigned to the Purchaser. Likewise, if a Purchased Contract is removed from the list of Purchased Contracts in accordance with the terms of the Purchase Agreement, such agreement shall not be deemed to have been assumed by the Trustee

-11-

or assigned to the Purchaser, pursuant to section 365 of the Bankruptcy Code or otherwise. To the extent an agreement is removed from the list of Purchased Contracts in accordance with the terms of the Purchase Agreement, the Trustee shall, within 10 days of such removal, serve a notice to the non-Debtor parties to such agreement that the Trustee will not seek to assume or assign such agreement to the Purchaser as part of the Sale.

12.     To the extent the Trustee agrees to add a Purchased Contract to the list of the Purchased Contracts set forth in the Purchase Agreement, or a Purchased Contract or the Cure Amount for a Purchased Contract otherwise is not properly included in a Cure Amount Notice, the Trustee shall serve a notice to the non-Debtor parties to such agreement that the Trustee seeks to assume and assign the Contract to the Purchaser as part of the Sale and such Contract shall become a Purchased Contract for purposes of this Order (the "Supplemental Cure Notice"). The Supplemental Cure Notice shall include the proposed Cure Amount for the Purchased Contract. The non-Debtor parties to the Purchased Contract shall have five (5) business days from the date of service of the Supplemental Cure Notice (the "Supplemental Deadline") to assert an objection to the assumption and assignment of the Purchased Contract or the proposed Cure Amount. Any such objection must be filed with the Court and served on the Trustee, special counsel to the Trustee and the Purchaser by the Supplemental Deadline. If no timely objection is filed and served with respect to a Supplemental Cure Notice, the assumption and assignment of such Purchased Contract and the related proposed Cure Amount shall be deemed approved, final and effective as of, and conditioned upon the occurrence of, the Closing Date, pursuant to section 365 of the Bankruptcy Code, without further order of the Court. If a timely objection is received and the parties are unable to resolve such objection, it will be scheduled to be heard by the Court. Without limiting the foregoing, this Order shall constitute approval of the

assumption and assignment to the Purchaser of any additional Purchased Contracts free and clear of any and all Encumbrances and a finding of adequate assurance of future performance by the Purchaser under sections 365(b)(1)(C) and (f)(2)(B) of the Bankruptcy Code or other applicable law.

13. Genentech shall have no claim against the Debtor or the Debtor's estate as a result of the consummation of the transactions contemplated by the Sale, the rejection of the Agreement or any other agreements or otherwise.

14. Upon the Closing of the Sale, the Trustee may pay the $30,000 Expense Reimbursement to the Stalking Horse Bidder without further order of this Court.

15. Except for Assumed Liabilities or as otherwise expressly set forth in this Order or the Purchase Agreement, the Purchaser shall not have any liability or other obligation of the Debtor arising under or related to any of the Purchased Assets, including, but not limited to the Excluded Liabilities. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Purchase Agreement, the Purchaser shall not be liable for any claims against the Debtor or any of its predecessors or Affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, substantial continuity, and employee benefit and/or welfare plan(s), (including, without limitation, agreements, contracts, plans, policies or obligations related to or concerning medical, vision, disability, or any health related matters), whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, or liquidated or unliquidated with respect to the Debtor or any obligations of the Debtor arising prior to the Closing Date, including, but not limited to, liabilities on account of Taxes arising,

accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Purchased Assets prior to the Closing Date, and the Purchaser shall be exonerated of any successor liability to any state taxing authority with regard to any Taxes, including sales tax. The Purchaser has given substantial consideration under the Purchase Agreement for the benefit of the holders of any Liens, claims, Encumbrances, and interests relating to the Purchased Assets.

16. In accordance with the Purchase Agreement, the Trustee shall not pursue any avoidance action against the Purchaser arising from a transfer of approximately $68,000 by the Debtor to the Purchaser. Further, upon the Closing of the Sale, the Purchaser shall have waived the right to assert any administrative expense claim in the Bankruptcy Case of the Company, including without limitation for use and occupancy relating to storage of equipment and materials in a controlled environment located at a facility of the Purchaser in San Diego, California.

17. The Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

18. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to any of the transactions under the Purchase Agreement.

19. Pursuant to Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure, this Order shall be effective immediately upon entry and the fourteen (14) day stays under such rules are hereby waived.

20. A Certified Copy of this Order may be filed with the appropriate clerk and/or recorded with the appropriate recorder to act to cancel the Liens and other Encumbrances of record with respect to the Purchased Assets, except the Permitted Encumbrances.

21. The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and conditions of the Purchase Agreement and the provisions of this Order.

22. This Order shall be binding in all respects upon the Debtor's estate, all creditors of, and holders of equity interests in, the Debtor (whether known or unknown), any subsidiaries of the Debtor, including Altus Pharmaceuticals Securities Corp., any holders of Encumbrances on the Purchased Assets, including without limitation Fish & Richardson P.C., all non-Debtor parties to the Purchased Contracts, all successors and assigns of the Purchaser, the Debtor and their affiliates and subsidiaries, the Purchased Assets and any trustees appointed in the Debtor's case. This Order and the Purchase Agreement shall inure to the benefit of the Trustee, the Debtor's estate, the Debtor's creditors, the Purchaser and their respective successors and assigns. The Purchase Agreement and any related agreement(s) shall not be subject to rejection.

23. This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and

instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

24. Nothing contained in any other order in this case shall alter, conflict with or derogate from the provisions of the Purchase Agreement, any related agreement or the terms of this Order, including, but not limited to, (a) the obligation of the Trustee to pay any amounts due to the Purchaser pursuant to the Purchase Agreement or any transactions contemplated thereby in the time and manner provided in the Purchase Agreement and without further order of this Court and (b) the status of any such payments as administrative priority expenses of the Debtor's estate pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code.

25. This Order constitutes authorization under all applicable jurisdictions' versions of the Uniform Commercial Code for the Purchaser to file UCC termination statements with respect to all security interests in or Liens on the applicable Purchased Assets.

26. The failure specifically to include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

27. The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

28.     This Court shall retain jurisdiction over the transactions contemplated in the Purchase Agreement for purposes of enforcing the provisions of this Order and the Purchase Agreement.

Dated: Boston, Massachusetts

_____Mar. 30_____, 2010                    _____
                                            UNITED STATES BANKRUPTCY JUDGE